## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

**CORRY FOAM PRODUCTS CO., Firestone Foam Products Co., a Division of Firestone Tire & Rubber Co., Respondent, Cross-Petitioner.**

No. 73–1262.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 17, 1973.

Decided Dec. 27, 1973.

Judith Wilkenfeld, N. L. R. B., for petitioner; Peter G. Nash, Gen. Coun., John S. Irving, Deputy Gen. Coun., Patrick Hardin, Associate Gen. Coun., Elliott Moore, Asst. Gen. Coun., Robert G. Sewell, Atty., N. L. R. B., Washington, D. C., on brief.

Walter B. Connolly, Jr., Akron, Ohio, for respondent; Charles A. Powell, III, Birmingham, Ala., on brief; Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel.

Before PHILLIPS, Chief Judge and EDWARDS and McCREE, Circuit Judges.

PER CURIAM.

The National Labor Relations Board seeks enforcement of its order finding respondent company to have violated Section 8(a)(5) and (1) of the National Labor Relations Act, as amended, (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.) (1972), by refusing to bargain with the union [1] previously certified by the Board as the exclusive bargaining representative of the company's over-the-road truck drivers following a National Labor Relations Board election.

Respondent in its cross-petition for review contends that enforcement should be denied because its refusal to bargain was justified by the facts that the Board had chosen an inappropriate collective bargaining unit and that an episode in the course of the election had, in any event, unfairly prejudiced the outcome of the vote.

As to the bargaining unit issue, respondent contends that the undisputed fact that there had been two prior Board elections held concerning this plant, at each of which the Board had found an appropriate bargaining unit which included production, maintenance and truck drivers in one bargaining unit (both of which elections had been lost by the union concerned) served to demonstrate that the Board's choice of a unit consisting only of all of the over-the-road truck drivers of the company (as petitioned for by the Teamsters' Union in this instance) was arbitrary and an abuse of its discretion.

It is, of course, clear that Congress has vested specific authority to determine appropriate bargaining units in the National Labor Relations Board. Section 9(b) of the Act provides that the Board:

"shall decide in each case whether, in order to assure to employees the full-est freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof. . . ." 29 U.S.C. § 159(b) (1970).

It is also true that the Supreme Court has declared that:

"The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947).

It is well established "that in reviewing the Board's determination under Section 9(b), a court is merely to consider whether the designated unit is *an* appropriate unit, and not whether it is *the* appropriate unit or if another unit may have been more suitable." Michigan Hospital Service v. N. L. R. B., 472 F.2d 293, 294 (6th Cir. 1972) (Emphasis in original).

We would note that in this instance the Board is following a craft unit designation consistent with the specific language of the Act rather than merely defining a unit consistent with the extent of organization and the union's desire. Nor do we think that the mere fact that the plant seniority system occasioned some overlap and interchange between production workers and truck drivers defeats the appropriateness of the unit. Although there are many instances where plant units, including truck drivers, have been found appropriate by the Board and upheld by the courts, it certainly is true that historically over-the-road truck driving is a recognized craft within the meaning of the statute. *See* American Bread Co. v.

1. Highway and Local Motor Freight Employees Local Union No. 667, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers.

N. L. R. B., 411 F.2d 147 (6th Cir. 1969), citing with approval, Mc-Mor-Han Trucking Co., Inc., 166 NLRB 700 (1967) and Ballentine Packing Co., Inc., 132 NLRB 923 (1961); N. L. R. B. v. St. John's Associates, Inc., 392 F.2d 182 (2d Cir. 1968); Pacemaker Mobile Homes, 194 NLRB No. 122 (1971); Western Wirebound Box Co., 191 NLRB No. 126 (1971); Tallahassee Coca Cola Bottling Co., Inc., 168 NLRB 1037 (1967), enf'd, N. L. R. B. v. Tallahassee Coca Cola Bottling Co., Inc., 409 F.2d 201 (5th Cir. 1969).

 As to the election issue, respondent relies directly upon the National Labor Relations Board's *Milchem* doctrine (Milchem, Inc., 170 NLRB 362 (1968)). In this case the Board held that where a known company representative or union representative invaded the immediate area where a Board election was being conducted, and engaged in prolonged conversation with those waiting to vote, on complaint the Board would deem such conduct prejudicial to the laboratory conditions needed for Board elections without inquiring into the nature of the conversations. Here the record clearly demonstrates that respondent's superintendent of the truck drivers unit was on the scene of the Board-conducted election at the door of the warehouse as the election took place and talked with the drivers as they went in to vote. The record also shows that the union won the election by a vote of 6–4 and, of course, has no desire to protest the violation of the *Milchem* rule by a company representative. We now have, as the Board did, the company's contention that the superintendent should be treated as if he were a union adherent or representative because of a

conversation quoted from him after the election to the effect that his father had been a union man and that he thought the union could help the drivers. As the Board found, however, there is no evidence at all in the record that he had indicated any such attitude during the election or prior thereto. Further, we note that in the *Milchem* case the Board's opinion called for "a sense of realism" in interpreting and applying its rule. Thus we find no merit in cross-petitioner's second issue.[2]

For the reasons stated above, the order of the National Labor Relations Board will be enforced.

---

2. At oral argument this court was informed that as a matter of Board regulation, the Board employee who had conducted this election was prohibited from testifying. No issue is presented on this score and in the circumstances of this case, we can hardly see how his evidence could have changed the result. Nonetheless, we express some apprehension about the operation of any such regulation. Understandable as may be the desire of the Board to have its personnel charged with conducting elections busy at that task rather than testifying about past elections, there may well be situations where in the interests of justice remand for the taking of just such testimony will be required absent an opportunity for a complaining party to secure the Board employee's testimony by deposition or other suitable means.